IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>SHEILIA REEVES,<br><br>Debtor. | Chapter 7<br><br>Case No. 05-3348-SSC<br><br>MEMORANDUM DECISION ON DEBTOR'S MOTION FOR SANCTIONS FOR A VIOLATION OF THE AUTOMATIC STAY AND GLEN PARK APARTMENT'S CROSS MOTION FOR RELIEF FROM THE STAY<br><br>(Opinion to Post) |

I. Preliminary Statement.

On July 18, 2005, the Debtor sent a letter to this Court, alleging that Glen Park Apartments LLC ("Glen Park") was violating the automatic stay and stating that she needed an immediate hearing to prevent immediate and irreparable injury, since she had no air conditioning in her apartment.[1] The Debtor believed that her air conditioning had been turned off because she had reinstated her bankruptcy petition. The Court construed the Debtor's letter as a Motion for Sanctions for a creditor's willful violation of the automatic stay and set an accelerated hearing for August 2, 2005. On July 20, 2005, the creditor, Glen Park, filed a cross motion to vacate the automatic stay because of the Debtor's failure to pay any rent for her apartment.

On August 2, 2005, the Debtor, Counsel for Glen Park, and a representative from

---

1. *See* Debtor's Exhibit H. Also, see Docket Entry No. 27.

the Creditor appeared at the accelerated hearing. The Debtor stated that she had not yet seen Glen Park's Motion for Relief from the Stay, and she needed to return to work, so an emergency evidentiary hearing on her Motion was not possible.

The Court set an evidentiary hearing on the Debtor's Motion and a preliminary hearing on Glen Park's Cross Motion for August 9, 2005. Since the Debtor was still without air conditioning at her apartment, the Debtor requested that someone on behalf of Glen Park immediately come to her apartment and fix her air conditioning unit. The Court agreed that this should be done as soon as possible, since the Court was continuing the hearing. The Debtor, on the record, waived the 48-hour notice required under Arizona law before a landlord may enter a residential apartment, and counsel for Glen Park avowed that someone would be at her apartment shortly to fix her air conditioner.[2]

On August 9, 2005, the parties appeared for the evidentiary hearing on the Motion and the Cross Motion. The Debtor, acting pro se, first presented her evidence to the Court. She called her 19-year-old son as her other main witness. Glen Park called several witnesses. Ultimately both the Debtor and Glen Park agreed that the Debtor should look for another apartment. The Court has now had an opportunity to review the Exhibits presented by the parties and sets forth its findings of fact and conclusions of law. Fed. R. Bank. P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334(b) and 157(b) (West 2005).

## II. Factual Discussion.

The Debtor filed her voluntary petition under Chapter 7 of the Bankruptcy Code on March 8, 2005. The Debtor's case was dismissed on March 29, 2005, because of the Debtor's failure to file a list of creditors in the proper format as required by Local Bankruptcy Rule 1007-1.[3] The Debtor did not file her Motion to Reinstate her case until June 20, 2005. On

---

**2.** Prior to and at the time of the hearing, Phoenix had been experiencing a record or near record heat wave. It was critical to the Court that the Debtor receive assistance as soon as possible.

**3.** *See* Docket Entry No. 14.

June 21, 2005 at 12:59 p.m., the Debtor's case was electronically reinstated.[4]

The Debtor conceded at the trial before this Court that she was previously evicted from another apartment complex in November 2004. She was apparently residing at a Budget Suites from the period from November 2004 until she moved into her apartment at Glen Park.[5]

On March 25, 2005, the Debtor entered into a six-month lease agreement ("Lease") with Glen Park for Apartment No. 46, located at 6301 N. 64th Drive, Glendale, Arizona.[6] Both the Debtor and Ms. Artis, the manager of Glen Park, testified that when the Debtor entered into the Lease, she was struggling to obtain sufficient funds to make the monthly payments under the Lease and that Glen Park was willing to defer or delay some of the payments so that the Debtor would be able to have her profit sharing plan utilized to made some of the rental payments.[7] At the time the Debtor entered into the Lease, and during all relevant time periods including as of the August 2 and 9 hearings, the Debtor stated that she was employed by Discover Card.[8] The Debtor testified that her son, "CJ," and 10-year-old daughter also resided at the apartment.[9] Under the terms of the Lease, the Debtor was required to pay $894.82 per month, for six months, starting April 1, 2005.[10] The Debtor did not disagree with Glen Park's evidence that she had made no rental payments for the months of April, May, June, July, and August, 2005, under the Lease. The Debtor also stated that she wanted to leave the apartment complex as soon as possible, but she was experiencing financial problems and unable to save any

---

**4.** *See* Docket Entry No. 19.

**5.** *See* Exhibit 11.

**6.** *See* Exhibit 1.

**7.** *See* Exhibit 1, Page 1, in the middle of the page, right-hand column which reflects that the Debtor's security deposit of $400 was waived by Glen Park. Hence, Glen Park knew that the Debtor was having financial problems when she entered into the Lease with it.

**8.** *See* Exhibit J.

**9.** Exhibit 1 also reflects this information at the top of Page 1 of the Lease.

**10.** Ms. Smith, who also testified on behalf of Glen Park at the trial, executed the Lease on behalf of the landlord.

funds to move.

On May 2, 2005, Glen Park issued a Notice of Intent to Terminate Lease because of the Debtor's non-payment of rent.[11]  The Debtor testified that, during this period, she was unable to obtain any funds from her profit sharing plan to pay the rent.  Glen Park then filed a forcible detainer action against the Debtor on June 14, 2005, in the Glendale Justice Court.[12]  The Debtor was summoned to appear and defend in the Action, with a trial date of June 21, 2005, 1:45 p.m.[13]

As noted previously, the Debtor filed a Motion to Reinstate her case on June 20, and this Court reinstated her case on June 21, 2005, at 12:55 p.m.  On June 21, 2005, at 8:09 a.m., the Debtor filed a letter with the Glendale Justice Court, stating that "On June 20, 2005, [she] filed a voluntary petition under Chapter 7. . . ."[14]  She also provided this case number in her letter and advised the Justice Court that any actions taken in violation of the automatic stay might be punishable as contempt of court.[15]  The Debtor testified, at the August 9 hearing before this Court, that she also contacted the attorneys for Glen Park in the Action around 11:00 a.m. on June 21, 2005 to notify them that her case had been reinstated, that they should not proceed with the trial that day, and that she was unable to leave work that day to advise the Justice Court and the attorneys in person of the reinstatement of her case.[16]  During the trial before this Court, Ms. Artis conceded that the Debtor had contacted Glen Park's law firm on June 21, since she testified that she was notified shortly thereafter of the reinstatement of the Debtor's case.  Glen Park offered no evidence to rebut the Debtor's testimony that Glen Park's law firm was notified, prior

---

**11.** *See* Exhibit 2.

**12.** *See* Exhibit 3.  The Summons and Complaint in the Action were contained in one document.

**13.** *Id.*

**14.** *See* Exhibit B.

**15.** *Id.*

**16.** The Debtor provided break information from her work for the day of June 21, 2005, to support her testimony that she called the attorneys and faxed documentation to the Justice Court and the attorneys as to the reinstatement of her case on that day.  See Exhibit J.

to the commencement of the trial in the Glendale Justice Court on June 21, of the reinstatement of the Debtor's case.

Nevertheless, on June 21, 2005, counsel for Glen Park proceeded with the trial before the Justice Court and obtained a judgment ("Judgment") against the Debtor, in the amount of $2,180.64, which included unpaid rent, late charges, attorneys' fees, and costs.[17] Interest accrued on this judgment at the Arizona State Court Judgment rate of 10 percent per annum.[18] Thereafter Glen Park caused a writ of restitution ("Writ") to be issued by the Justice Court on June 29, 2005, commanding the Sheriff to remove the Debtor from her apartment.[19] However, when the Sheriff did arrive to evict the Debtor, the Debtor provided a copy of the her bankruptcy petition and other relevant documents with her bankruptcy case number, and the Sheriff left the premises. The Debtor and her family still reside at the Glen Park complex.

The Debtor and her son testified that after Glen Park obtained its Judgment and Writ, their living conditions deteriorated dramatically, because they no longer had air conditioning in their apartment. At the time, Phoenix was experiencing one of its worst heat waves of the year. The Debtor and her son testified that the temperature, on a daily basis at the complex, exceeded or was near 115 degrees F. The witnesses for Glen Park conceded that it was exceedingly hot at the time. The Debtor and her son continued for a period of at least two weeks hauling bags of ice to the apartment and installing their own portable air conditioning unit in one of the windows. The Debtor did not provide a written notice to Glen Park of the lack of air conditioning, but she stated that when she passed Ms. Artis, who remarked during this time period, "Hot, isn't it?", she felt that Glen Park had purposely turned off her air conditioning to force her to leave her apartment. Her apartment was also positioned directly across from, and in full view, of the Glen Park manager's office, so the Debtor felt that Ms. Artis, the manager, was well aware of the Debtor's predicament.

---

**17.** *See* Exhibit I.

**18.** *Id.*

**19.** *See* Exhibit A.

1   The Debtor's son also testified that on July 19, after the portable air conditioning unit had been placed in the apartment's window, Ms. Artis knocked on the door of the Debtor's apartment and told Mr. Calvert to remove the air conditioning unit from the window. Mr. Calvert testified that for a period of two weeks, he was at the apartment during the day with his little sister, that the apartment was unbearably hot, and that Glen Park would not provide air conditioning to the apartment. The portable unit did provide some comfort to the family once it was properly installed by the Debtor. The Debtor refused, and continues to refuse, to remove the portable unit.

  Mr. Glen Scott Kirkpatrick testified on behalf of Glen Park that the complex experienced an extensive underground leak which caused very little, if any, chilled water to be brought into the complex for the air conditioning units on the buildings of the complex.[20] As a result, the entire complex was without air conditioning until the underground leak was found and fixed. Mr. Kirkpatrick testified that the complex was without air conditioning for the period from July 25 to July 29, 2005. Mr. Kirkpatrick did enter the Debtor's apartment, as part of his duties in repairing the leak, and confirmed that her apartment had no air conditioning, other than the portable unit which was not installed properly when he was there, and the apartment was hot.

  Ms. Smith testified on behalf of Glen Park as the assistant to Ms. Artis. She confirmed that the air conditioning was not operating at the complex from July 25 through July 29, 2005, and that she had separately been notified by the Debtor that the air conditioning was not working in the Debtor's apartment. She prepared and provided the notice to the Debtor that an individual would be at the Debtor's apartment on Monday, July 25, 2005 to try to repair her unit.[21] Ms. Smith also testified that the cooling mechanism for the complex was actually a type of "chiller" which was placed on the roof of the apartment building. The chiller did not cool based on Freon or a similar type of product in a compressor, but relied on cold water brought through pipes to the chiller through which air was blown, chilling the air that was sent to the

---

  **20.** *See* Exhibit 5.

  **21.** *See* Exhibit 6. Both the Debtor and Glen Park agreed that the notice had the improper date at the top. They agreed that it was dated the previously Friday or July 22, 2005.

apartments at the complex. Hence, when the underground pipes started to leak, the complex had no cold water to send through the pipes to the chiller.

At the August 9, 2005 hearing, Glen Park did provide this Court with a conformed copy of the Motion to Vacate Judgment filed on July 25, 2005, in the Glendale Justice Court.[22] The Debtor stated that she had never received a copy of the Motion. Counsel for Glen Park and the Debtor agreed, and so stipulated, that the Glendale Justice Court, for some unknown reason, did not have the original Motion in its court record.

Even after the hearing on August 2, 2005, when the Debtor waived, on the record, the requisite notice under Arizona law for Glen Park's agents to enter her apartment and fix her air conditioning, Glen Park did not send anyone to fix the air conditioning in her apartment and did not contact her or her son to make such arrangements. In essence, Glen Park took no action after the August 2 hearing, although this Court had anticipated that someone would be sent immediately to the Debtor's apartment to provide some relief to her and her family.

At the conclusion of the August 9 hearing, the Court determined that Glen Park had acted in violation of the automatic stay and ordered that the Judgment and Writ be vacated as a matter of law. The Court also took the Debtor's Motion and Glen Park's Cross Motion under advisement, advising the parties that the Court would determine what additional relief should be awarded to one or both parties.

### III. Legal Analysis

A. The Debtor's Motion for Sanctions

Although the Debtor entered into a six-month lease agreement with Glen Park during the interim period while her case was dismissed, the Debtor and her bankruptcy estate acquired an interest in property after the commencement of the case once her case was reinstated. 11 U.S.C. §541 (a)(7). This interest in property was protected by the automatic stay. 11 U.S.C. §362 (a)(3). Although the bankruptcy trustee could have determined that the Debtor

---

[22]. *See* Exhibit 10.

acted improperly and did not act for the bankruptcy estate, avoiding any such interest in property under 11 U.S.C. §549, or determining that such in interest in a lease should be rejected under 11 U.S.C. §365 or abandoned from the bankruptcy estate under 11 U.S.C. §554, it was ultimately within the province of the trustee to determine how to proceed. The Court, therefore, concludes that the Debtor's post-petition possessory interest in real property became property of the bankruptcy estate subject to the automatic stay.

The Ninth Circuit is clear that an action taken in violation of the automatic stay is void, not voidable. United States v. Schwartz (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992); rev'g 119 B.R. 207 (9th Cir. BAP 1990). If a creditor is notified that an individual has filed a bankruptcy petition and acts willfully in violation of the automatic stay, the debtor may be entitled to compensatory and punitive damages. In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989). It is also incumbent on the creditor to take whatever action is necessary to stop a violation of the automatic stay; Eskanos & Adler v. Leetien, 309 F.3d 1210 (9th Cir. 2002); California Employment Devel. Dept. v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147 (9th Cir. 1996); Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams), 127 B.R. 239 (9th Cir. BAP 1991).

In the Eskanos decision, the creditor had filed a post-petition action, arguably unaware that the debtor had filed a bankruptcy petition. The creditor argued that since it took no further action post-petition, it was simply preserving the status quo. The Ninth Circuit disagreed, noting that it was incumbent upon the creditor to take the affirmative action of dismissing the action. Since it did not, it was engaged in a continuing violation of the stay. In the Del Mission case, the Ninth Circuit had initially determined that the State was holding certain property of the debtor. The State did not turn the funds over to the debtor, stating that it was simply preserving the status quo until other issues could be resolved at the appellate level. The Ninth Circuit concluded that the mere fact that the State continued to hold the funds that had been determined to be property of the estate was an ongoing violation of the automatic stay which the debtor could separately pursue. Finally, in the Bloom Decision, the creditor had filed an action pre-petition, but had been notified that the individual debtor had filed a bankruptcy petition. Nevertheless the creditor continued with the action post-petition, attempting to have a

default hearing as to the debtor. The Ninth Circuit concluded that such action conducted by a creditor who knew of the automatic stay, but continued with its actions post-petition, was a willful violation of the stay for which the debtor could receive sanctions against the creditor.

Because the Debtor's case in this matter was dismissed in March for the Debtor's failure to file a list of creditors in the proper format, certainly the actions taken by Glen Park when her case was dismissed would have been appropriate. In re Thomas, 194 B.R. 641 (Bkrtcy.D.Ariz. 1995). However, on June 21, 2005 counsel for Glen Park was notified that the Debtor's case had been reinstated. Glen Park also conceded, through Ms. Artis, that it was notified of the reinstatement on the same day. However, Glen Park proceeded with the trial before the Glendale Justice Court on June 21, obtained the Judgment and Writ in the action, and attempted to have the Sheriff serve the Writ on the Debtor to evict her. Moreover, Glen Park took no further action to vacate the Judgment and the Writ until the Debtor sent her Motion for Sanctions to this Court on July 18, 2005. At that point, Glen Park did prepare and file a Motion to Vacate the Judgment with the Glendale Justice Court on July 25, 2005; however, Glen Park did not prosecute the Motion. For instance, Glen Park's counsel did not realize that the original Motion had not been placed on the docket of the Justice Court, nor that the Debtor had not been served, until just prior to the commencement of the trial before this Court on August 9, 2005. This failure to act was a continuing violation of the automatic stay.

Although Glen Park apparently had a system-wide failure of its chiller for the period from July 25, 2005 through July 29, 2005, the Debtor was experiencing problems with the unit in her apartment for the period from July 18, 2005, when she sent her Motion for Sanctions to this Court through the hearing on August 9, 2005. The Court concludes that this inaction by Glen Park to fix her air conditioning unit was to force the Debtor to leave her apartment. As such, this failure to fix her air conditioning unit was also a continuing violation of the automatic stay.

This Court concludes that Glen Park's inaction in voiding the Judgment and Writ obtained by it in violation of the automatic stay and its failure to provide the Debtor with air conditioning for a prolonged period of time is outrageous conduct for which the Debtor should

- 9 -
Case 2:05-bk-03348-SSC    Doc 46    Filed 08/30/05    Entered 08/30/05 13:38:05    Desc
Main Document    Page 9 of 12

1  recover punitive damages under the reasoning of In re Bloom. Further, this Court finds Glen
2  Park's actions egregious in nature. It is obvious to the Court that a reasonable person would
3  suffer harm under similar circumstances. Accordingly, the Debtor is entitled to damages. In re
4  Dawson, 390 F.3d 1139, 1149-50 (C.A. 9th 2004).

Even though the Debtor entered into a post-petition, six-month Lease, the Court concludes that the Debtor is entitled to punitive damages in the amount of $1,000. As noted hereinafter, the Court also concludes that based on Glen Park's actions in violation of the stay, the Debtor need not pay the rental obligation that she owes to Glen Park of $894.82 per month for the period from April 2005 through August 2005; however, the Debtor shall immediately remove herself from the Glen Park complex.

B.  Glen Park's Cross Motion for Relief from the Automatic Stay

The Court also heard Glen Park's Cross Motion on August 9, 2005. The Debtor did not pay any deposit under her Lease, and her Lease was entered into post-petition. Her Lease was also for a short duration of six months, starting April 1, 2005. Although the Debtor and her bankruptcy estate obtained an interest in real property as a result of the Lease once the Debtors' case was reinstated, the Debtor acted without the consent of her Chapter 7 trustee. Such a residential lease of short duration is of little or no value to the bankruptcy estate. Hence, it is likely that the Chapter 7 trustee would have rejected the bankruptcy estate's interest in the Lease, or he would have abandoned said interest from the estate. If the trustee had taken no action to assume or reject this residential lease of real property within 60 days of the order for relief, or within such additional period as would be appropriate, since this Lease was entered into post-petition and the Debtor's case was dismissed for a period of time, the Lease would have been deemed rejected. 11 U.S.C. §365 (d)(1). Moreover, the Debtor's possessory interest in the Lease will end on September 30, 2005, even if this Court takes no action. Once the Lease terminates, pursuant to its terms and conditions, it is no longer property of the bankruptcy estate even if the trustee takes no action. 9C Am. Jur. 2d, Bankruptcy, Title VI, *Estate Administration; Avoiding Powers, Subsection F- Executory Contracts and Unexpired Leases*, §2151 (May 2005),

and cases cited therein.

The Debtor has made no payments under the Lease, and conceded at the August 9, 2005 hearing that she wanted to move from the complex as soon as possible. She simply does not have the financial resources to do so. The Debtor currently owes $894.82 per month for the period from April 1, 2005, through August 31, 2005, for the aggregate amount of $4,474.10. The Lease also provides that Glen Park will be entitled to its attorneys' fees and costs, if Glen Park is the prevailing party in seeking to enforce the Lease.[23]

Given the Debtor's failure to perform under the Lease and her inability to perform for the remainder of the Lease, and the mere possessory interest of the Debtor in the real property, the Court concludes that Glen Park has shown cause under 11 U.S.C. §362 (d)(1) to have the automatic stay vacated to continue with its rights and remedies under Arizona law. However, the Court has vacated the Judgment and the Writ, and the Court also concludes that because of Glen Park's refusal to act in a timely manner to correct its actions in violation of the automatic stay, the Debtor need not pay the post-petition obligation in the amount of $4,474.10 which has accrued under the Lease. The Debtor shall also not be responsible for any attorneys' fees and costs of Glen Park's counsel that have accrued to date.

It is also clear to this Court that in awarding the punitive damages to the Debtor and vitiating the Debtor's obligation to Glen Park for the period from April 1, 2005 through August 31, 2005, the Debtor must promptly vacate her apartment at Glen Park, or Glen Park will be able to proceed with its rights and remedies under Arizona law. Hence, Glen Park shall determine wether the Debtor has vacated her apartment by close of business, Friday, September 2, 2005. If she does, Glen Park may pay her the punitive damages in the amount of $1,000, and then re-let the Debtor's apartment to a third party. If the Debtor does not voluntarily vacate the apartment by Friday, September 2, 2005, then Glen Park's counsel may proceed with the Action in the Glendale Justice Court, seeking the September 2005 rent and any attorneys' fees and costs that may be awarded to Glen Park. Glen Park may also offset this September rent and other

---

[23]. *See* Exhibit 1 at paragraph 17.

Case 2:05-bk-03348-SSC    Doc 46    Filed 08/30/05    Entered 08/30/05 13:38:05    Desc
Main Document    Page 11 of 12

1 charges, from September 1, 2005 on, against the Debtor's award of $1,000 in punitive damages,
2 if the Debtor does not vacate the apartment by Friday, September 2, 2005.

#### IV.  Conclusion

Based upon the foregoing, the Debtor's Motion for Sanctions shall be GRANTED, and the Debtor shall be awarded punitive damages in the amount of $1,000.

Glen Park's Cross Motion for Relief from the Automatic Stay shall also be GRANTED, with Glen Park to proceed with its rights and remedies under Arizona law, which includes re-letting the apartment if the Debtor vacates the apartment by close of business on Friday, September 2, 2005.  If the Debtor does not vacate the apartment by close of business on Friday, September 2, 2005, Glen Park may proceed with its action in the Glendale Justice Court for the rent owing as of September 1, 2005, and any late charges, costs, or attorneys' fees or costs thereon, and may offset said obligation against the award of punitive damages of $1,000 to the Debtor.

DATED this 30th day of August, 2005.

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

BNC TO NOTICE